| | | |
|---|---|---|
| 1 | SEDGWICK, DETERT, MORAN & ARNOLD LLP<br>REBECCA A. HULL  Bar No. 99802 | *Changes have been<br>made to this document |
| 2 | One Market Plaza<br>Steuart Tower, 8th Floor | |
| 3 | San Francisco, California 94105<br>Telephone: (415) 781-7900 | JS-6 |
| 4 | Facsimile: (415) 781-2635<br>rebecca.hull@sdma.com | |

Attorneys for Defendant
Metropolitan Life Insurance Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL DYER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>METROPOLITAN LIFE<br>INSURANCE COMPANY,<br><br>　　　　Defendant. | CASE NO. CV 07-2085 R (AJWx)<br><br>**FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT** |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL DYER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>METROPOLITAN LIFE<br>INSURANCE COMPANY,<br><br>　　　　Defendant. | CASE NO. CV 07-2085 R (AJWx)<br><br>**FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT** |

This action came on for bench trial on June 30, 2008. P. Randall Noah of the Law Office of P. Randall Noah appeared for Plaintiff Carol Dyer. Rebecca A. Hull of Sedgwick, Detert, Moran & Arnold LLP appeared for Defendant Metropolitan Life Insurance Company. After considering the evidence, briefs and argument of counsel, the Court makes the following findings of fact and conclusions of law:

## **FINDINGS OF FACT**[1]

### **A.   Long Term Disability Benefits Under the Plan**

1.   This is an action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA") for recovery of long term disability ("LTD") benefits under an employee welfare benefit plan. On March 29, 2007, Plaintiff filed this suit to recover LTD benefits under the Kaiser Permanente Welfare Benefits Plan.

2.   Defendant Metropolitan Life Insurance Company ("MetLife") is the

---

[1] Any finding of fact that constitutes a conclusion of law is hereby adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is hereby adopted as a finding of fact.

claim administrator for the Kaiser Permanente Welfare Benefits Plan ("Plan"). MetLife issued a group policy of long term disability insurance to Kaiser Foundation Health Plan, Inc. ("KFHP") to fund the benefits under the Plan, which provides LTD coverage to eligible participants. ADMIN 657-58, 778, 805-07.[2]

3. KFHP is the Plan's sponsor and also is the Plan administrator. ADMIN 657-58.

4. KFHP employees who are regularly scheduled to work 20 or more hours per week are enrolled in the LTD Plan after completion of two years of service. ADMIN 565, 783.

5. Participants may receive LTD benefits if they are eligible for the Plan, are disabled as that term is defined under the Plan, and became disabled while covered under the Plan. ADMIN 786.

6. The Plan defines "disabled" in pertinent part as:

> "Disabled" or "Disability" means that, due to sickness, pregnancy or accidental injury, you are receiving Appropriate Care and Treatment from a Doctor on a continuing basis; and
>
> 1. during your Elimination Period and the next 24 month period, you are unable to earn more than 80% of your Predisability Earnings or Indexed Predisability Earnings at your Own Occupation for any employer in your Local Economy; or
>
> 2. after the 24 month period, you are unable to earn more than 80% of your Indexed Predisability Earnings from any employer in your Local Economy at any gainful occupation for which you are reasonably qualified taking into account your training, education, experience and Predisability Earnings.
>
> "Appropriate Care and Treatment" means medical care and treatment that meet all of the following:
>
> 1. it is received from a Doctor whose medical training and clinical

---

[2] Pages of the administrative record, which the parties jointly designated as Exhibit 1, are referenced by the prefix "ADMIN" followed by the page number(s).

          experience are suitable for treating your Disability;

2.     it is necessary to meet your basic health needs and is of demonstrable medical value;

3.     it is consistent in type, frequency and duration of treatment with relevant guidelines of national medical, research and health care coverage organizations and governmental agencies;

4.     it is consistent with the diagnosis of your condition; and

5.     its purpose is maximizing your medical improvement.

ADMIN 787.

    7.     The "Elimination Period" is a 90-day period during which no benefits are payable, beginning on the day the participant first becomes disabled. ADMIN 783, 786.

    8.     A participant must be under the continuous care of a doctor during the elimination period. ADMIN 786.

    9.     Participants are eligible to receive benefits for up to 36 months for disability due to a mental or nervous disorder or disease. ADMIN 784, 792.

    10.    A "Mental or Nervous Disorder or Disease" is defined by the Plan as "a medical condition of sufficient severity to meet the diagnostic criteria established in the current Diagnostic And Statistical Manual of Mental Disorders. You must be receiving Appropriate Care and Treatment for your condition by a mental health Doctor." ADMIN 792.

    11.    The Plan documents set forth procedures for making benefit claims, including procedures for the submission of claims to MetLife, determinations approving or denying claims, review of claims that have been denied in whole or in part, and information regarding a participant's rights under ERISA. ADMIN 567-568, 652-53, 672-76, 784, 795-98, 805-07.

    12.    The Plan documents delegate discretionary authority to MetLife, as

the insurer for LTD benefits and a Plan fiduciary, to construe and interpret the Plan's terms and approve or deny claims for LTD benefits under the Plan. ADMIN 381, 806.

13. The Plan documents expressly provide:

> Each Named Fiduciary, and each person to whom fiduciary authority shall have been allocated or delegated under Section 4.2,[3] shall have full and complete discretionary authority with respect to its responsibilities under the Plan and any Program hereunder. All actions, interpretations, and decisions of a Named Fiduciary or a delegate thereof shall be conclusive and binding on all persons and shall be given the maximum possible deference allowed by law.

ADMIN 381.

> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

ADMIN 806.

### B. Plaintiff's Claim

14. Plaintiff was a participant of the Plan by reason of her employment.

15. Plaintiff first initiated a claim for Plan benefits on November 13, 2003. ADMIN 370-71.

16. On November 19, 2003, MetLife sent Plaintiff a letter with various forms to complete and return by December 17. ADMIN 369.

17. Plaintiff's employer returned its form regarding her claim to MetLife (ADMIN 370-71), but Plaintiff did not return the forms she was required to

---

[3] Sections 4.1 and 4.2 provide that "Named Fiduciaries" is a term that includes the insurers of benefit programs where benefits are provided by insurance contracts, and the insurer exercises discretion with regard to its duties under the contract. ADMIN 381. *See also* ADMIN 387, 778.

provide, and her claim was therefore deemed abandoned.  ADMIN 367-68.

18.     MetLife sent Plaintiff a letter on December 22, 2003, informing her of this determination.  ADMIN 367-68.

19.     On December 20, 2005, Plaintiff renewed her claim for LTD benefits.  ADMIN 314.

20.     Plaintiff conceded that the claim was late, but claimed that she "was totally unaware [that she] was entitled to this benefit through [her] employer."  ADMIN 317.

21.     Plaintiff indicated that she had last worked May 13, 2002 and that her disability began May 13, 2002.  ADMIN 314.

22.     Plaintiff stated that she was first treated on August 31, 2001, for stress, anxiety, high blood pressure, and depression.  ADMIN 314.

23.     Plaintiff received state disability payments from May 2002 through May 2003.  ADMIN 272-75.

24.     Plaintiff's attending physician, Duane Collins, reported that he had treated her for anxiety/stress and headaches, with her last treatment on January 3, 2003.  ADMIN 318.

25.     Dr. Collins stated that Plaintiff was totally disabled from May 13, 2002 through January 6, 2003.  ADMIN 318.

26.     Plaintiff submitted a number of medical notes and clinic progress records with her claim, dated August 31, 2001, through January 3, 2003.  These notes discussed her treatment for adjustment disorder, anxiety, and depression.  ADMIN 321-54.

27.     In a letter dated December 23, 2005, MetLife requested additional information, including a supervisor statement, an employer statement, state disability benefit documents, and physician, medication, and insurance information, from Plaintiff.  ADMIN 312.

28.     On January 12, 2006, MetLife wrote to Dr. Collins, with a copy to

Plaintiff, requesting additional information about Plaintiff's medical condition. ADMIN 259-261.

29. Plaintiff called MetLife and gave the names of two additional physicians who had treated her, Drs. Maloff and Curtis. ADMIN 66.

30. MetLife requested information from Drs. Maloff and Curtis, by fax, on January 31, 2006, with the information to be provided by February 24, 2006. ADMIN 256-28.

31. The MetLife Case Manager called Plaintiff on January 31, 2006. ADMIN 66.

32. During that call, Plaintiff said that she had been unaware of possible entitlement to LTD benefits until a coworker told her, although she had been previously given a copy of the Summary Plan Description. ADMIN 66.

33. Plaintiff stated that her last day worked was May 7, 2003, and disclosed that she had returned to work full time on August 23, 2004. ADMIN 66.

34. The Case Manager told Plaintiff that if the outstanding requested medical information was not received, her claim would be declined. ADMIN 66.

35. On February 9, 2006, MetLife send Plaintiff a letter informing her that the claim was denied for lack of proof of disability under the Plan. ADMIN 241-42.

36. Plaintiff called and disputed the timing of the denial, contending that medical information was not required to be provided until February 24, 2006, and that her claim therefore could not be decided until then. ADMIN 68.

37. Plaintiff was told that if additional medical information was received, her claim would be reviewed again. ADMIN 68.

38. Dr. Maloff provided a report dated August 21, 2003, regarding Plaintiff, which he faxed to MetLife with other records on February 13, 2006. ADMIN 243-49.

39. Dr. Maloff's records showed that Plaintiff gave him a history that her

difficulties began after a coworker began to harass her. As a result, she told him, she had depression, feelings of hopelessness, despair, worthlessness, and uselessness. ADMIN 244.

40. The records received by fax from Dr. Maloff on February 13, 2006, included the following information in a Treating Physician's Report on Permanent Disability from August 2003, one year before Plaintiff returned to work, under "Recommendations":

[ ] Continue current treatment regimen [¶] Duration: not necessary

[ ] Pursue vocational rehabilitation: N/A

Comments: [Patient] claims to have been offered transfer out of current department which she desires however insists that doing so is premature until 1) she receives an apology 2) that entire [workers' compensation] claim is settled & 3) her employer accepts responsibility for difficulties [she?] felt. At same time she claims she is perfectly able to perform job duties. When I pointed out some difficulties [with] her position she accused me of wanting to send her back to work prematurely & walked out of office refusing any further treatment. She also claims her attorney advised her not to [return to work] until her case was settled but also insisted on returning to new position as soon as employer [illegible]. She should be transferred to new dept ASAP. She is not [qualified injured worker]. No [treatment] nec[essary].

ADMIN 245.

41. MetLife reviewed the newly submitted medical information on February 20, 2006, and concluded that it did not substantiate inability to perform Plaintiff's occupation as a physical therapy aide. ADMIN 176-77.

42. MetLife noted, among other things, that Dr. Maloff had documented that Plaintiff told him she was "perfectly able to perform job duties," and that in September 2002, she had gone to Maui for a marathon. ADMIN 176.

43. MetLife determined that Plaintiff's reported job stress was not a disability under the Plan, and denied the claim because the medical information

submitted did not substantiate inability to work.  ADMIN 176-77.

44. Plaintiff was informed of MetLife's decision by letter dated February 20, 2006.  ADMIN 176-77.

45. On February 27, 2006, Plaintiff provided a report from Dr. Curtis about her psychological condition.  ADMIN 179-239.

46. The MetLife Appeals Unit wrote to Plaintiff on February 28, 2006, stating that the additional information was received, but that Plaintiff she intended to request a review of the claim denial, she must follow the review procedures explained in her denial letter.  ADMIN 174.

47. On June 22, 2006, the MetLife Appeals Unit wrote to Plaintiff and reminded her that a request for an appeal must be received in writing by MetLife within 180 days of her receipt of the denial letter. ADMIN 170.

48. Plaintiff submitted her written appeal on August 16, 2006.  ADMIN 154.

49. MetLife acknowledged receipt of Plaintiff's appeal in writing on August 22.  ADMIN 132.

50. Plaintiff's medical information was referred to an independent physician consultant, Marcus J. Goldman, M.D., Board Certified American Board of Psychiatry and Neurology.  ADMIN 123-27.

51. Dr. Goldman prepared a written review of Plaintiff's medical records, dated September 14, 2006.  ADMIN 123-27.

52. Dr. Goldman noted that the assessment from Dr. Curtis dated May 11, 2004, revealed that Plaintiff had failed to participate in recommended and necessary treatment.  ADMIN 125.

53. Dr. Goldman opined that the data did not support a lack of functionality due to a psychiatric disorder, and that the medical information did not support functional psychiatric limitations from May 7, 2002 (the alleged onset of disability) forward.  ADMIN 126.

54.  Dr. Goldman's report pointed out that there were only a handful of medical notes for review for the period after May 2, 2002 (the approximate onset of alleged total disability), and that the available information did not support the existence of a major mental illness or mental disorder that would preclude work as of the alleged onset of disability and thereafter.  ADMIN 126.

55.  Dr. Goldman opined that the data in the record did not support cognitive dysfunction, and likewise did not establish a major DSM affective, anxiety, or psychotic disorder that would preclude work.  ADMIN 126-27.

56.  Dr. Goldman opined that psychiatric acuity and severity also could not be supported, given the "somewhat random and poorly cohesive data" contained in the record.  ADMIN 127.

57.  On September 18, 2006, MetLife sent an appeals extension letter to Plaintiff informing her that her appeal would be completed by October 1.  ADMIN 121.

58.  By October 25, a decision had not yet been reached regarding the appeal and Plaintiff was informed, by telephone and letter, that Dr. Goldman's report was being faxed to Drs. Collins and Maloff for their review and comment.  ADMIN 119.

59.  Plaintiff was told that if comments were not received by November 6, 2006, MetLife would make its determination based upon the medical information then on file.  ADMIN 119.

60.  Dr. Collins responded on November 2, objecting to Dr. Goldman's report and reasserting his position that Plaintiff was not able to engage in gainful work.  ADMIN 113.

61.  Plaintiff also provided a brief statement from Michael R. Dyer, Employee Assistance Coordinator for her former employer, stating that Plaintiff had been "encouraged to continue in ongoing individual psychotherapy and was given appropriate referrals."  ADMIN 110.  Plaintiff did not provide any response

1  from Dr. Maloff.

2  62.  On November 5, 2006, MetLife upheld the determination to deny
3  benefits.  ADMIN 101-04.

4  63.  In so doing, MetLife credited Dr. Goldman's report that the records
5  failed to establish Plaintiff's functional inability to work at her occupation for any
6  employer in her local economy.  ADMIN 103.

7  64.  On November 29, 2006, MetLife wrote Plaintiff, acknowledging the
8  information received from her doctors and informing her that the determination of
9  November 5 constituted completion of the full and fair review required by the plan
10  and federal law, and that her administrative remedies under the Plan were
11  exhausted.  ADMIN 105-06.

## CONCLUSIONS OF LAW

13  1.  The issues raised by plaintiff's complaint are governed by ERISA.

14  2.  Abuse of discretion review applies.  The Plan confers discretionary
15  authority on MetLife to interpret the terms of the Plan and make the claim
16  determination at issue in this action.  The Supreme Court has held that when a plan
17  confers discretionary authority, the standard of review is abuse of discretion.
18  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  In determining
19  the appropriate standard of review, the starting point is the language of the Plan.
20  *Id*. at 111.  Where, as here, an ERISA plan confers discretionary authority to
21  determine eligibility for benefits, a district court must review the administrator's
22  denial of benefits under a deferential "abuse of discretion" standard of review.  *Id*.
23  at 115.  If the plan does not afford such discretion, the appropriate standard of
24  review is *de novo*.  *Id*.

25  3.  Here, the Plan documents unequivocally confer discretionary
26  authority on MetLife with regard to the claim decisions in issue, and the record
27  shows no "wholesale and flagrant" violations (or any violations at all) of the
28  procedural requirements of ERISA.  Rather, MetLife afforded Plaintiff numerous

opportunities to submit information to support her claim, advised her of her rights and reasons for its decisions, and obtained appropriate medical review by a Board-certified physician in an appropriate specialty. Abuse of discretion review therefore is appropriate.

4. MetLife's determination should be afforded a high degree of deference under the circumstances. *Abatie v. Alta Health & Life Ins. Co.*, 458 F. 3d 955 (9th Cir., 2006), holds that when the Plan confers discretion, the District Court must determine how much deference to afford the determination. "A district court, when faced with all the facts and circumstances, must decide in each case how much or how little to credit the plan administrator's reason for denying insurance coverage." *Id*. at 968.

5. Plaintiff suggested at trial that the recent decision of the Supreme Court in *Metropolitan Life Insurance Co. v. Glenn*, ____ U.S. ___, 128 S. Ct. 2343 (2008) requires a different level of scrutiny or a lesser degree of deference than would be applied under *Abatie*. The Court disagrees; *Glenn* clarified that the existence of a structural conflict of interest is merely one factor to be considered by a reviewing court when a fiduciary's claim decision is made under a grant of discretion.

6. The Court concludes that full deference is appropriate to the decision in issue here. Plaintiff was afforded multiple opportunities to submit additional information and did so, and the reviews of her claim addressed all information submitted. Plaintiff's medical records were reviewed by a physician who was Board-certified in psychiatry and neurology. When Plaintiff renewed her claim, long after the claim-period had expired, MetLife processed her claim, though it was under no obligation to do so. "When an administrator can show that it engaged in an 'ongoing, good faith exchange of information between the administrator and the claimant,' the court should give the administrator's decision broad deference." *Id*. at 972. MetLife's handling of the claim was entirely

1  consistent with the ERISA requirement of a full and fair review, and its
2  determination will be afforded a high degree of deference under the circumstances.

3      7.    The denial of Plaintiff's claim was not an abuse of discretion.[4] The
4  issue of whether a claim denial was an abuse of discretion turns on whether there is
5  a rational basis in the record for that decision; if there is a rational basis, then there
6  was no abuse of discretion. The Ninth Circuit has established the parameters of the
7  abuse of discretion standard in ERISA cases. *Oster v. Barco of Cal. Employees*
8  *Retirement Plan*, 869 F.2d 1215, 1218 (9th Cir. 1998), held that a court will not
9  interfere with a plan fiduciary's decision-making process unless the decision is so
10 "patently arbitrary and unreasonable as to lack foundation in factual basis and/or
11 authority in governing case or statute law." The Ninth Circuit further held that it
12 would be improper for a reviewing court to substitute its judgment for the
13 judgment of the fiduciary, unless "the actions of the [fiduciary] are not grounded
14 on 'any reasonable basis'." *Id.* Similarly, a fiduciary's decision will not be
15 overturned if evidence exists that a reasonable mind might accept as adequate to
16 support the decision, even if it is possible to draw inconsistent conclusions from
17 the evidence. *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994).

18     8.    Here, the administrative record more than supports the denial, whether
19 analyzed under an abuse of discretion standard or under *de novo* standard. First,
20 Dr. Maloff noted as early as August 2003 that Plaintiff had no need of further
21 treatment, and documented her admission that she was refusing to return to work
22 for reasons that were unrelated to her medical condition – including her desire to
23 settle her workers' compensation claim before returning, and her demand that her
24 employer provide an apology and move her to a different department. As noted by
25 Dr. Goldman, Plaintiff failed to follow up to receive the recommended and

---

[4] As the Court informed the parties from the bench during trial, however, the Court would reach the same conclusions with regard to the disposition of the claim under the a *de novo* standard of review.


1  necessary treatment, and her records did not establish a lack of functionality due to
2  a psychiatric disorder or functional psychiatric limitations as of the alleged onset of
3  disability or thereafter.  ADMIN 126.  Dr. Goldman also opined that the
4  information did not provide sufficient data to support a major mental illness or
5  mental disorder that would preclude work.  ADMIN 126.  Dr. Goldman, a Board
6  certified physician, reviewed Plaintiff medical records, and opined that the records
7  did not show that Plaintiff was functionally impaired from performing her own
8  occupation.  MetLife was entitled to credit Dr. Goldman's opinions.  *Black &*
9  *Decker Disability Plan v. Nord,* 538 U.S. 822, 834 (2003).

10  9.  Plaintiff appears to have had some medical issues.  However, the fact
11  that a participant has developed health issues does not alone establish eligibility for
12  benefits under the Plan.  Rather, the medical condition must result in functional
13  impairments sufficient to render her "disabled" under the Plan.  "That a person has
14  a true medical diagnosis does not by itself establish disability.  Medical treatises
15  list medical conditions from amblyopia to zoolognia that do not necessarily prevent
16  people from working."  *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*,
17  370 F.3d 869, 880 (9th Cir. 2004).

18  10.  Plaintiff failed to fully pursue a claim for social security disability
19  benefits as required by the Plan's terms.  The Plan states that "Monthly Benefit *will*
20  *not be payable* unless 1. you provide proof that you have applied for Social
21  Security disability benefits . . . ."  ADMIN 789 (emphasis added).  The Plan also
22  notes that "Your Monthly Benefit may be reduced once you have received
23  approval or final denial of your claim from the Social Security Administration.  For
24  purposes of this section, final denial of your claim means that you have received a
25  'Notice of Denial of Benefits' from an Administrative Law Judge."  ADMIN 789.
26  The administrative record contains no evidence that Plaintiff applied for SSDI, nor
27  that she pursued a claim for SSDI through an ALJ determination.  Therefore,
28  Plaintiff has failed to comply with the Plan's requirements and the denial of her

claim is rationally supported by the record on that basis, as well.

11. Plaintiff was qualified and able to work at her occupation for an employer in her local economy. Her claim was premised on the supposition that conflicts in her work place made it appropriate for her to stop going to work. Her medical records do not show that those workplace clashes rose to the level of a mental disability by causing a functional impairment that prevented her from performing the duties of her own occupation. Even if her assertion were taken at face value, however, it would not constitute evidence of "disability" under the Plan, because the Plan requires more than a claimed inability to perform one's own job in one's former workplace in order to meet the definition of "disabled." Rather, a participant will be found disabled under the Plan only if she is "unable to earn more than 80% of your Predisability Earnings or Indexed Predisability Earnings at your Own Occupation *for any employer in your Local Economy*." ADMIN 787 (emphasis added). Plaintiff's contention was that she was "on disability due to 'job stress'" (ADMIN 134) that allegedly was caused by contact with certain of her coworkers at KFHP. ADMIN 137. Evidence of workplace conflicts at KFHP was not sufficient to support a claim that Plaintiff was disabled under the Plan, however, because as Dr. Maloff reported, she admittedly was able to perform her actual occupational duties (and, in addition, she told him that while on disability leave she went to Hawaii to take part in a marathon). ADMIN 176.

12. It is at all times a claimant's burden to support and prove her claim. *See Jordan v. Northrop Grumman Corp Welfare Benefit Plan*, 63 F. Supp. 2d 1145, 1157 (C.D. Cal. 1999), *aff'd*, 370 F.3d 869 (9th Cir. 2004); *Martin v. Continental Cas. Co.*, 96 F.Supp.2d 983, 994 (N.D. Cal. 2000). Here, Plaintiff never provided evidence beyond, at most, a showing that she experienced distress and anxiety as a result of contact with certain former coworkers at KFHP. She made no attempt to show that she was functionally impaired from working for a different employer and, indeed, she had found work with a different employer

before ever pursuing her claim under the Plan.  Thus, Plaintiff failed at the administrative level to carry her burden of establishing that she was disabled as defined by the Plan.

13.   At trial, Plaintiff conceded that the California Department of Insurance letter dated February 27, 2004, and the subsequent Decision and Order of the Insurance Commissioner affirming that letter, withdrawing approval of certain insurance policy forms, does not apply here.  The Court agrees.  First, the withdrawal of approval was prospective only, that is, it applied only to insurance policies issued after February 27, 2004.  *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 867 (9th Cir. 2008) ("Assuming that the Commissioner may prohibit insurance companies from using this discretionary clause in future insurance contracts, he cannot rewrite existing contracts so as to change the rights and duties thereunder."); *see also Mitchell v. Aetna Life Ins. Co.*, 359 F. Supp. 2d 880, 889 (C.D. Cal. 2005); *Lundquist v. Continental Cas. Co.*, 394 F. Supp. 2d 1230, 1246 (C.D. Cal. 2005) ("[v]irtually every court that has addressed the California DOI's Notice and its impact on the standard of review in ERISA cases has rejected the argument that the Notice entitles plaintiffs to a *de novo* standard of review").[5]

14.   The Court finds that based upon the evidence and the applicable law, MetLife is entitled to judgment in its favor.  Plaintiff did not prove her claim and it was appropriate for MetLife as the claim administrator to deny her application for

---

[5] *See Firestone v. Acuson Corp. Long Term Disability Plan*, 326 F. Supp. 2d 1040, 1051 (N.D. Cal. 2004), which held that the DOI's notice and purported grounds, even if correct and assuming the DOI's attempted action was not preempted by ERISA, operated prospectively only, and did not affect existing disability policies.  *Firestone* further determined that the California Insurance Code section cited by the DOI did not confer upon a claimant a right to "reform the nature of the policy and obtain benefits for which he never bargained by engaging courts to second guess the Commissioner's approval of the policy." *Id.*, citing *Peterson v. American Life and Health Ins. Co*, 48 F.3d 404, 410 (9th Cir. 1995).  Here, the policy documents for the Plan took effect on December 1, 1998.  ADMIN 778.  Given that the courts are in agreement that the DOI's revocation of approval was not retroactive, that action has no potential impact here.

1    long term disability benefits under the Plan, whether that decision is reviewed for
2    abuse of discretion or *de novo*.
3         15.    For all of the foregoing reasons, the Court finds in favor of Defendant
4    Metropolitan Life Insurance Company and Judgment is entered in favor of Defendant.
5
6    The Court has reviewed the findings of fact and conclusions of law and finds each
7    is supported by administrative evidence.
8
9
10   DATE:  August 18, 2008            _____
11                                     Manuel L. Real, U.S. District Judge